Denis V. Brenan
P.O. Box 465
Newtown Square PA 19073
(610) 359-0893

Christopher A. Ferrara
(Admitted *pro hac vice*)
American Catholic Lawyers Association, Inc.
420 Route 46 East, Suite 7
P.O. Box 10092
Fairfield NJ 07004-6092
(973) 244-9895
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**
_____

| | |
|---|---|
| KATHLEEN KUHNS, JOYCE MAZALEWSKI, and KATHLEEN TEAY, | |
| *Plaintiffs*, | Civil Action No.: 5:08-cv-02606 (JKG) |
| -v- | |
| CITY OF ALLENTOWN, CHIEF OF POLICE ROGER MacLEAN, both individually and in his official capacity, ALLENTOWN WOMEN'S CENTER, and JENNIFER BOULANGER, | DOCUMENT FILED ELECTRONICALLY |
| *Defendants*. | |

_____                       :

### PLAINTIFFS' RESPONSE TO
### STATEMENT OF "UNDISPUTED" FACTS
### BY DEFENDANTS CITY OF ALLENTOWN
### AND ROGER MACLEAN

#### Preamble

Defendants City of Allentown and Chief of Police Roger MacLean (collectively, "the City"), in their Memorandum of Law (Document 90-2, at pages 2-5), allege what they contend to

be undisputed facts that support their "Amended" Motion for Summary Judgment. Many of the alleged undisputed facts are not at all undisputed and, even if they were, do not support a grant of summary judgment.

The alleged undisputed facts of the City are numbered herein by Plaintiffs' counsel according to the order in which they appear in defendants' Brief and are responded to *seriatem*:

**1.     The City of Allentown informed the Allentown Women's Center in October 2007 that they will not press charges or take any action against any person at the AWC unless there is a threat to life or a person. (Defendants' Exhibit F, Boulanger Anestad deposition, page 56, lines 14-22)**

That the City made said statement is not disputed. However, the City did not comply with its own representation to Allentown Women's Center and Jennifer Boulanger (collectively "AWC") in that the City did not press charges or take action against persons at AWC who made threats to the lives or persons of pro-life advocates, including, for example, plaintiff Joyce Mazalewski. Plaintiffs' Exhibit 2, Deposition of Mazalewski, page 76, line 1, to page 79, line 10; page 82, line 19, to page 86, line 12; and page 138, line 19, to page 139, line 13.

**2.     The City is/was neither an advocate for the protesters or for Defendant AWC as evidenced by the May 16, 2008 letter from the City Solicitor to Assistant Police Chief Joseph Hanna. (Defendants' Exhibit A, letter of Solicitor Jerry Snyder.)**

That a letter so stating was issued is not denied. However, the City did not inform Plaintiffs or other pro-life advocates of this letter and it is denied that the City did not act as an advocate for AWC. To the contrary, the City has acted as an advocate for AWC

(1) by providing AWC with various assistance and advice, including advice as to how AWC could prove claims against pro-life advocates (Plaintiffs' Exhibit 3, Deposition of Hanna,

2

page 29, line 10, to page 30, line 20), advice on how to pursue a "Right to Know" records request (Plaintiffs' Exhibit 3, Deposition of Hanna, page 73, lines 4 to 19), advice as to how to prosecute a private party criminal complaint (Plaintiffs' Exhibit 3, Hanna deposition, page 71, lines 22 to 25); and advice as to whether a private citizen could, based upon knowledge of a license plate of a motor vehicle, determine the name and address of the person owning the vehicle with that license plate (Plaintiffs' Exhibit 3, Hanna deposition, page 72, lines 6 to 21);

(2) by providing unwarranted police security to AWC at a private prayer vigil honoring the life of Dr. George Tiller, an abortionist (Plaintiffs' Exhibit 3, Hanna deposition, page 94, line 11, to page 95, line 5);

(3) by failing to bring charges against AWC for making innumerable false reports of criminal activity by pro-life advocates to the Allentown Police Department and by incepting false criminal complaints which were either unjustified legally or factually, or both, even though, in many instances, the City had access to video evidence of AWC (Plaintiffs' Exhibit 3, page 86, line 17, to page 87, line 24;

(4) by evidencing hostility to pro-life advocates "from Day One," showing a preference for protecting AWC and creating the impression that pro-life advocates do not belong at AWC. (Plaintiffs' Exhibit 4, Kuhns deposition, p. 47, lines 7-19; Plaintiffs' Exhibit 3, Hanna deposition, page 29, line 10, to page 30, line 20, advising AWC to obtain a camera to better attempt to substantiate AWC's claims against pro-life advocates), and

(5) by approving, facilitating and cooperating in AWC's "blockade" of plaintiffs' pro-life advocacy in the Keats Street crosswalk in violation of the Consent Judgment in *Arietta II*, as alleged in this lawsuit.

3. This practice of taking a neutral stance is further evidenced by Police

**Department command meeting minutes of April 18, 2007 and June 25, 2008, which respectively read that the Department would treat "the Women's Center with a hands-off approach" and "we need to remain neutral." (Defendants' Exhibits B and C)**

The third alleged undisputed fact is admitted insofar as it accurately reports what the minutes professed. But it is denied, for the reasons set forth in No. 2 above and hereinafter, that the City in fact maintained a "hands off" approach and remained neutral, whatever "hands-off" and "neutral" mean.

**4.     Moving Defendant City of Allentown continued its neutral position as reflected in Hanna's correspondence of June 25, 2009 to Plaintiff Kuhns that the police department [sic] maintains a neutral position. (Defendants' Exhibit D)**

See responses to Nos., 1, 2 and 3 above, which are incorporated by reference as Plaintiffs' response to the fourth alleged undisputed fact. Further, for the reasons stated above, and as follows, it is denied that the City maintained a "neutral" position.

**5.     Additionally, the Police Department responded to a complaint that Plaintiff Kuhns violated the Consent Judgment by stepping into the crosswalk, but Kuhns was not charged with any offense. (Defendants' Exhibit E)**

The fifth alleged undisputed fact is admitted. However, that fact is irrelevant and does not support a motion for summary judgment for a number of reasons: First, the City never contended that Plaintiff Kuhns violated the *Arietta II* Consent Judgment by stepping into the crosswalk; second, Miss Kuhns never admitted that she violated the Consent Judgment; and, third, even if there were a violation of the Consent Judgment, such a violation would not constitute a chargeable criminal offense, so that the City's failure to charge an offense is irrelevant. (*See also* Plaintiffs' Exhibit 4, Deposition of Kuhns, page 73, line 10, to page 74, line 11.)

**6.     Moreover, it is undisputed that the Police Department responded to several complaints since the Consent Judgment was entered into, but it has not issued any citations against either the Plaintiffs or the AWC Defendants. (Defendants' Exhibit J, Kuhns deposition, page 47, lines 20-23)**

The sixth alleged undisputed fact is denied as stated, for several reasons: First, the City's Exhibit "J," on page 47, does not state what the City represents that it states. Second, the City responded to innumerable false complaints by AWC, not "several," since the date the Consent Judgment was entered. Third, AWC/Boulanger should have been charged with the offenses of blocking the street (18 Pa.C.S. § 5507) and making false reports of criminal activity (18 Pa.C.S. § 4906) literally hundreds of times over the past seven years, including 40 failed criminal prosecutions most of which were based on Boulanger's discredited testimony. (Exhibit 3, Hanna deposition, page 86, line 17, to page 91, line 20.)

**7.     Assistant Chief Hanna advised Boulanger that his interpretation of the court order was that the protesters, including Plaintiff [sic], could reach their arms inside the crosswalk. (Defendants' Exhibit F, Boulanger Anestad deposition, page 64, lines 4-6)**

The seventh alleged undisputed fact is admitted, but it does not support the City's motion for summary judgment. On the contrary, it merely demonstrates that the *Arietta II* Consent Judgment guarantees plaintiffs' right to distribute literature to expectant mothers situated in the crosswalk, which is the very right the City has violated by authorizing AWC to block the crosswalk with tarpaulins.

**8.     Boulanger has had zero face-to-face meetings with Moving Defendant McLean [sic]. (Defendants' Exhibit F, page 85, lines 10-15)**

The plaintiffs do not admit or deny the eighth alleged undisputed fact, but that fact, even

if true, is irrelevant and does not support a motion for summary judgment because, among other reasons, the Defendant MacLean controlled the Police Department and because the Assistant Chief who reported to him and who met with him frequently contacted Boulanger in person and in writing. (Plaintiffs' Exhibit 3, Deposition of Hanna, page 13, line 7, to page 14, line 25; page 18, line 25 to page 19, line 2; Plaintiffs' Exhibit 5, Deposition of MacLean, page 12, line 3, to page 15, line 8; page 17, line 18, to page 17, line 25.) Furthermore, the alleged fact does not deny that there were frequent non-face-to-face communications between Boulanger and MacLean. In fact, according to documents produced in discovery, there were written communications.

**9.    Boulanger met with the Mayor of the City of Allentown about vacating Keats Street, but he [sic] Mayor did not indicate he was interested in such action. (Defendants' Exhibit F, page 86, lines 10-14)**

The Plaintiffs cannot admit or deny the ninth alleged undisputed fact. However, even if that allegation were true, it is denied that the meeting with the Mayor supports a motion for summary judgment of the City. On the contrary, that meeting, if it occurred, as well as the numerous subjects discussed in that meeting, are further evidence of the City's partiality and undue solicitude toward the interests of AWC. (Plaintiffs' Exhibit 6, Deposition of Boulanger, page 86 at lines 3 to 8.). Nor does this fact alter the action of the Police Department in authorizing AWC's blockage of the crosswalk, which effectively nullifies plaintiffs' pro-life message. *See*, *e.g.*, Plaintiffs' Exhibit 8, Affidavit of Plaintiff Teay in Opp., ¶ 5, and Exhibit 1 (video clips).

**10.    Boulanger did not have a meeting with the Mayor with regard to the enactment of an ordinance (or any ordinance) which would have the effect of nullifying the consent decree settlement. (Defendants' Exhibit F, page 87, lines 11-19)**

Plaintiffs cannot admit or deny the tenth alleged undisputed fact. However, that fact, even if true, does not support the City defendants' Amended Motion for Summary Judgment. Furthermore, Boulanger met with City Councilmen with respect to an ordinance creating a zone larger than the crosswalk. She claims that she did not know the effect of the passage of such an ordinance. (Plaintiffs' Exhibit 6, Boulanger deposition, page 87, line 11, to page 90, line 19.)

11. **The tarps are not used at the AWC until someone coming into the building is right in front of the crosswalk. (Defendants' Exhibit F, page 93, lines 19-20)**

The eleventh alleged undisputed fact is denied because Boulanger, whose testimony is quoted by the City, claimed that she did not know from day to day what the escorts who held the tarps did. Furthermore, even if that fact were true, it would not negate the gravamen of the Plaintiffs' complaint concerning the use of tarps. (Plaintiffs' Exhibit 6, Boulanger deposition, page 110, lines 7 to11.)

12. **Boulanger did not advise the City of Allentown or any of its representatives that AWC intended on using the tarps. (Defendants' Exhibit F, page 102, lines 1-4)**

The Plaintiffs cannot admit or deny the twelfth alleged undisputed fact. In addition, whether or not the City had prior knowledge of AWC's intent to use the tarps, it is clear that the City knew of the use of the tarps and explicitly authorized their use. (*See*, for example, Plaintiffs' Exhibit N in Opposition to City's original motion for summary judgment, Exhibit 3, Hanna deposition, page 33, line 2, to page 35, line 18; page 38, lines 1 to 23; page 40, lines 1 to 17; Exhibits 2, 4, 5, and 6 to Hanna deposition transcript, which are Plaintiffs' Exhibits 11, 12, 13, and 14 in Opposition; and Plaintiffs' Ex. 6, Boulanger deposition, page 106, line 14, to page 107, line 2.)

13. **Boulanger advised Assistant Chief Hanna that the tarps were hand held**

**instead of stationary. (Defendants' Exhibit F, page 104, line 25, to page 105, line 2)**

It is admitted that Boulanger testified that the tarps were hand-held. However, the use of those hand-held tarps and the City's authorization to AWC to use those tarps support the Plaintiffs' complaint that there was a conspiracy between AWC and the City to deny, or chill the exercise of, Plaintiffs' First Amendment rights.

**14.    The City of Allentown has not authorized the AWC to use the tarps. (Defendants' Exhibit F, page 107, lines 9-15)**

Denied. While at one point in her testimony, Boulanger testified that the City never authorized AWC to use the tarps, she also admitted elsewhere in her testimony that in a conversation with Assistant Chief Hanna, he approved use of the tarps, whereas Hanna admitted to oral conversations with her about use of the tarps. (*See* Exhibit 3 in Opposition, Hanna Dep., page 64, line 15, to page 66, line 16, *and* Exhibit 6 in Opposition, Boulanger Dep., page 106, line 14, to page 107, line 2).

Further, the City's own records show that the City authorized AWC the use of the tarps on multiple occasions. Indeed, to this day, the City continues to allow the use of tarps even though they interfere with the Plaintiffs' freedom of speech. (*See* plaintiffs Exhibits C, D, G, I, K, and N in opposition to the City's original motion for summary judgment. *See also*, response to No. 12 above which is incorporated by reference herein and Plaintiffs' Ex. 3 in Opp., Hanna deposition, page 64, line 15, to page 66, line 13, and Exhibits 5 and 6 to that deposition (Plaintiffs' Exhibits 13 and 14.)

**15.    Boulanger has never discussed the use of tarps with Chief MacLean, the Mayor of the City of Allentown, or with the City Solicitor. (Defendants' Exhibit F, page 107, line 24, to page 108, line 5)**

The fifteenth alleged undisputed fact is denied as stated. Furthermore, in view of the fact that the Allentown Police Department authorized the use of tarps, Boulanger's testimony, even if substantively accurate, does not support a motion for summary judgment. *See also* responses to Nos. 12 and 14 above, which are incorporated by reference herein.

16.     **The AWC did not meet with the City of Allentown to voice any objections to the settlement with the protesters from <u>Arietta</u>. (Defendants' Exhibit F, page 111, lines 18-21)**

The sixteenth alleged undisputed fact is denied. First, the citation to the record alleged for that statement of the City defendants is inaccurate. Second, even if the support and the testimony were accurate, that alleged undisputed fact is irrelevant and does not support a motion for summary judgment because the Consent Judgment/settlement has been approved by the Court.

17.     **The AWC refused to allow the City of Allentown Police Department [to] review the videotapes taken by AWC without a subpoena. (Defendants' Exhibit F, page 119, line 20, to page 120, line 1)**

The seventeenth alleged undisputed fact is denied. The exhibit cited by AWC makes it clear that AWC did not deny the Allentown Police Department the opportunity to review AWC's video evidence. (City's Exhibit F, page 119, line 20, to page 120, line 16, which indicates that the Police Department was allowed to review AWC's video evidence without the need for a subpoena.)

18.     **The protesters placed a manger scene at the AWC, which was reported by the AWC to the City of Allentown Police Department. (Defendants' Exhibit F, page 131, line 21, to page 132, line 3)**

The eighteenth alleged undisputed fact is admitted. However, that fact does not support

the City's Amended Motion for Summary Judgment because the report by AWC is irrelevant. There was nothing illegal or immoral about Christians celebrating the Christmas season by displaying a manger scene on a public street and no one claimed that there was. *See*, for example, Plaintiffs' Exhibit No. 6, Boulanger deposition, page 131, lines 12 to 25; page 132, lines 1 to 3; page 132, line 18, to page 133, line 18.

**19.   However, nobody was arrested as a result of that complaint. (Defendants' Exhibit F, page 132, lines 15-17)**

The nineteenth alleged undisputed fact is admitted. However, it is irrelevant that no one was arrested when no crime was committed. *See also*, Plaintiffs' response to No. 18 which is incorporated herein.

**20.   The AWC was told by the City of Allentown that they could not have stationary tarps and that AWC could not use the tarps in such a way as to impede the flow of traffic. (Defendants' Exhibit G, Joseph Hanna deposition, page 38, lines 6-8)**

The twentieth alleged undisputed fact is denied as stated. To the contrary, the City's Exhibit "G" makes it clear that neither the City nor its Police Department ever told AWC that AWC could not employ tarps by holding them by hand across Keats Street on both sides of the crosswalk. Whether or not the City ever advised AWC that it could not use "stationary" tarpaulins and could not use tarps to impede the flow of traffic is irrelevant to the fact that the City authorized the use of the tarps in the manner complained of by the Plaintiffs. (*See* Plaintiffs' Exhibit 3, Hanna deposition, page 33, line 24-25; page 34, lines to 25; page 35, lines 1 to 18; page 38, lines to 23. *See also* Plaintiffs' responses to City's Nos. 12 and 14 above, which are incorporated by reference.)

**21.   Assistant Chief Hanna never encouraged Boulanger to continue to use the**

10

**tarps at AWC. (Defendants' Exhibit G, Hanna deposition, page 82, lines 22-24)**

Denied. The City's explicit authorization for continued use of the tarps constitutes official encouragement of their use. *See* plaintiffs' Exhibit N in Opp. to City's original motion for summary judgment, which states: "they [AWC] are *allowed to use tarps* so long as it is not impeding traffic and they put them up immediately before the client and remove immediately after the client passes. *This policy will continue as it has...*"

The City further encouraged use of the tarps when it advised Boulanger that "[T]he protesters have had an issue with *your use of tarps* to shield entry for the clients. *We have determined* that no traffic violation exists so long as the use of the tarps does not block vehicles traveling in the traffic way and that *they are removed promptly once the client has entered the building*." *See* Exhibit K in Opp. That is, the City explicitly encouraged Boulanger to use the traps *every time a client enters AWC,* so long as the tarps are taken down when the clients enter the building after plaintiffs' message has been blocked—a direct violation of the City's obligation to protect plaintiffs' access to the crosswalk under the Consent Judgment.

The undisputed fact is that the City authorized the use of the tarps in the manner complained of by the Plaintiffs and never instructed AWC that AWC could not employ the tarps in that manner. *See also*, Plaintiffs' Exhibit 3, Hanna deposition, page 33, lines 24 to 25; page 34, lines 1 to 25; page 35, lines 1 to 18; page 38, lines 1 to 23, and Plaintiffs' responses to Nos. 12, 14, and 20 above, which are incorporated by reference.

**22. There have been zero protesters who have been convicted. (Defendants' Exhibit G, Hanna deposition, page 87, lines 3-5)**

The twenty-second alleged undisputed fact is admitted. However, that fact is irrelevant and does not support the Amended Motion for Summary Judgment. On the contrary, the fact that

pro-life advocates were falsely accused hundreds of times by AWC, were charged 40 times with groundless criminal offenses, yet were never convicted of any crimes, only demonstrates the concert of action between the City and AWC. (Plaintiffs' Ex. 3, Hanna deposition, page 87, lines 3 to 5)

**23. A pedestrian has the right-of-way in the crosswalk. (Defendants' Exhibit H, Roger MacLean deposition, page 32, line 22, to page 33, line 1)**

The twenty-third alleged undisputed fact is denied as stated. The testimony of defendant City does not state that the pedestrian would have the right-of-way in the crosswalk, but merely that the pedestrian would "probably" have the right-of-way. Furthermore, the "crosswalk" created by the Consent Judgment was not a crosswalk within the meaning of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. Sections 3542 and 3543, but rather was specially created by agreement of plaintiffs *in return for plaintiffs' right to have access to the same crosswalk* for counseling and distribution of literature to women approaching AWC. In addition, even if pedestrians had the right-of-way, that would not permit defendants to deny Plaintiffs' First Amendment rights or to violate the Consent Judgment.

**24. It would also be legal for the protesters to use tarps on both sides of the crosswalk while pedestrians are in the crosswalk. (Defendants' Exhibit H, MacLean deposition, page 47, line 25, to page 48, line 18)**

Denied as a legal conclusion not supported by undisputed facts. Further, this legal conclusion is irrelevant to the City's Amended Motion for Summary Judgment because the plaintiffs have never held tarps on both sides of the crosswalk, or in any other manner, and their conduct in that regard is not at issue and would not prove or disprove the legality of the conduct of AWC or the authorization of that conduct by the City.

**25.     Chief MacLean has not spoken to Boulanger since the settlement of <u>Arietta II</u>. (Defendants' Exhibit H, page 58, lines 15-18)**

Plaintiffs cannot admit or deny alleged undisputed fact No. 25. However, there was no need for Police Chief MacLean to speak with Boulanger because his surrogate, Asst. Chief Joseph Hanna, who was in close contact with Chief MacLean, communicated with Boulanger both in writing and orally on behalf of the Police Department and, as noted above, what Assistant Chief Hanna knew, Chief MacLean knew and vice-versa. (Plaintiffs' Ex. 3, Hanna deposition, page 13, line 12, to page 14, line 25; page 16, line 23, to page 19, line 2; page 59, line 12, to page 60, line 10; page 63, lines 1 to 24; page 65, line 19, to page 66, line 16; Plaintiffs' Ex. 5, MacLean deposition, page 12, line 3, to page 17, line 25). *See also*, plaintiffs Exhibits C, D, G, I, K, and N in opposition to City's original motion for summary judgment, which show that MacLean was "in the loop" on dealings between AWC and the City on this issue.

**26.     When tarps are not being used, the protesters remain in the street. (Defendants' Exhibit I, Kathleen Teay deposition, page 42, lines 10-15)**

The twenty-sixth alleged undisputed fact is denied. To the contrary, there was no testimony that the protesters remained in the street when tarps were not being used. Instead, the testimony indicates that in accordance with the Consent Judgment and Settlement Agreement in *Arietta II*, the pro-life advocates were in the street as people were passing from the parking lot of AWC to AWC.

**27.     Plaintiffs Teay and Mazalewski do not know of any facts that support Plaintiffs' claim that the AWC and the City of Allentown have reached an understanding and have acted in concert. (Defendants' Exhibit I, Teay deposition, page 52, lines 8-14; Defendants' Exhibit K, Joyce Mazalewski deposition, page 149, line 21, to page 150, line 1)**

The twenty-seventh alleged undisputed fact is denied. To the contrary, plaintiff Teay, in her deposition, testified that the facts which support the conclusion that the City and AWC were acting in concert were the use of tarps as described and the permission which the City police officers, after checking with their supervisors, gave to AWC to use the tarps even though those tarps inhibited Plaintiffs' speech, and flew in the face of the *Arietta II* Consent Judgment. Furthermore, she also indicated the fact that the City treated the pro-life advocates disparately in regard to their complaints was evidence that the City and AWC were acting in concert. (Plaintiffs' Exhibit 7, Deposition of Teay, page 30, line 4, to page 33, line 3) Similarly, plaintiff Mazalewski, in her deposition, indicated the fact that the conduct of AWC was inconsistent with the Consent Judgment in *Arietta II*; that the use of tarps was as a result of an AWC plan which the City authorized, acquiesced in, and cooperated in, and that the City favored AWC with regard to the conduct of police investigations and provision of services as compared with those involving pro-life advocates all evidence that the defendants were acting in concert with one another. (Plaintiffs' Exhibit 2, Mazalewski deposition, page 22, line 21, to page 24, line 5; page 38, line 13, to page 39, line 22; page 82, line 19, to page 86, line 12; page 137, line 20, to page 146, line 3; and page 148, line 17, to page 150, line 11; Plaintiffs' Ex. 8, Affidavit of Kathleen Teay; and Plaintiffs' Ex. 9, Affidavit of Joyce Mazalewski)

**28.    Plaintiff Kuhns acknowledged that there is the same safety concern created by the use of tarps as the presence of people (including the protesters) being [sic] in the street along side [sic] the crosswalk. (Defendants' Exhibit J, Kathleen Kuhns deposition, page 51, lines 13-17)**

The twenty-eighth alleged undisputed fact is denied. To the contrary, plaintiff Kuhns testified that when she is on the Plymouth Street side of the suspended tarps (i.e., on the east

14

side), she feels safer than the people holding the tarps. Furthermore, this case is not about safety considerations. (Plaintiffs' Exhibit 4, Deposition of Kuhns, page 51, lines 13 to 17)

**29. Plaintiff Mazalewski even admitted that the tarps do not block Keats Street. (Defendants' Exhibit K, Mazalewski deposition, page 29, lines 7-13)**

The twenty-ninth alleged undisputed fact is denied. To the contrary, it is clear from the testimony that the tarps which Mazalewski indicated did not block Keats Street were not those were held parallel to the sides of the crosswalk but, instead, were the tarps attached to the tops of the fence of AWC's parking lot. (Plaintiffs' Exhibit 2, Deposition of Mazalewski, page 29, line 3, to page 32, line 9)

**30. There are times when the protesters are in the street when a car turns onto Keats Street. (Defendants' Exhibit K, Mazalewski deposition, page 132, lines 6-9)**

The thirtieth alleged undisputed fact is denied as stated and, in any event, is irrelevant. Instead, the testimony was that the pro-life advocates were on a part of Keats Street where cars travel. However, as noted above, the pro-life advocates are allowed by the *Arietta II* Consent Judgment and Settlement Agreement to be on Keats Street when expectant mothers and other visitors to AWC are using the crosswalk running between the AWC and AWC's parking lot. Plaintiffs are also allowed to walk within the crosswalk itself when no AWC-related persons are using it, and alongside the crosswalk when AWC-related persons do use it.

**31. Plaintiff Mazalewski cannot point to any affirmative action taken by the City of Allentown to support her allegation that the City and AWC are cooperating in any manner. (Exhibit K, Mazalewski deposition, page 138, lines 1-9)**

The thirty-first alleged undisputed fact is denied for all of the reasons stated above, including response No. 27, incorporated herein by reference, which demonstrates that plaintiff Mazalewski

testified to the affirmative action taken by the City and supported her allegation that the City and AWC are cooperating.

Dated: August 2, 2010

                                                Respectfully submitted,

| | |
|---|---|
| s/ Denis V. Brenan (DVB4549) | s/ Christopher A. Ferrara (CAF2422) |
| DENIS V. BRENAN, ESQ. | CHRISTOPHER A. FERRARA, ESQ. |
| Pennsylvania Litigation Counsel | (Admitted *pro hac vice*) |
| for AMERICAN CATHOLIC LAWYERS | AMERICAN CATHOLIC LAWYERS |
|   ASSOCIATION, INC. |   ASSOCIATION, INC. |
| P.O. Box 465 | 420 Route 46 East, Suite 7 |
| Newtown Square, PA 19073 | P.O. Box 10092 |
| Phone: (610) 359-0893 | Fairfield, NJ 07004-6092 |
| *Counsel for Plaintiffs* | Phone: (973) 244-9895 |
| | *Co-counsel for Plaintiffs* |