KATHLEEN KUHNS;                    )
JOYCE MAZALEWSKI; and              ) Civil Action
KATHLEEN TEAY,                     ) No. 08-cv-02606
                                   )
                  Plaintiffs       )
                                   )
          vs.                      )
                                   )
CITY OF ALLENTOWN;                 )
CHIEF OF POLICE ROGER MacLEAN,     )
  both individually and in his     )
  official capacity;               )
ALLENTOWN WOMEN'S CENTER, INC.; and )
JENNIFER BOULANGER,                )
                                   )
                  Defendants       )

                    *    *    *

APPEARANCES:

          CHRISTOPHER A. FERRARA, ESQUIRE
          DENIS BRENAN, ESQUIRE
               On behalf of Plaintiffs

          ROBERT G. HANNA, JR., ESQUIRE
          JAMES D. YOUNG, ESQUIRE
               On behalf of Defendants City of Allentown and
               Chief of Police Roger MacLean

          SUSAN FRIETSCHE, ESQUIRE
          THOMAS E. ZEMAITIS, ESQUIRE
               On behalf of Defendants Allentown Women's Center,
               Inc. and Jennifer Boulanger

                    *    *    *


                  O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on the Amended Motion

for Summary Judgment of Defendants City of Allentown and Chief of

Police Roger MacLean, which motion was filed together with a brief on June 30, 2010, and the Motion of Defendants Allentown Women's Center and Jennifer Boulanger for Summary Judgment, which motion was filed with a brief on June 30, 2010. Plaintiffs responded in opposition to both motions on August 2, 2010.

For the following reasons, I grant the Amended Motion for Summary Judgment of Defendants City of Allentown and Chief of Police Roger MacLean, and I enter judgment in favor of those defendants and against plaintiffs on Counts I and IV.

In addition, I grant in part and deny in part the Motion of Defendants Allentown Women's Center and Jennifer Boulanger for Summary Judgment. Specifically, I grant the latter motion to the extent it seeks summary judgment on Count I, and I deny it to the extent it seeks summary judgment on Count IV; and I enter judgment in favor of those defendants and against plaintiffs on Count I.

As a result, the only count remaining in plaintiff's Complaint is Count IV alleging a Pennsylvania state-law claim for public nuisance against defendants Allentown Women's Center, Inc. and Jennifer Boulanger.[1]

## JURISDICTION

Jurisdiction in this case is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     By my Order and Opinion dated and filed March 31, 2009, I granted defendants' motion to dismiss Counts II and III of the Complaint.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to plaintiffs' claims allegedly occurred in Allentown, Lehigh County, Pennsylvania, which is within this judicial district.

<u>PROCEDURAL HISTORY</u>

Plaintiffs initiated this action on June 4, 2008 by filing a four-count civil Complaint for Injunctive Relief and Damages ("Complaint") against the City of Allentown and Chief of Police Roger MacLean (collectively "City defendants"); and the Allentown Women's Center, Inc. ("Center") and its Director, Jennifer Boulanger (collectively "Center defendants"). Plaintiffs allege that they are pro-life advocates who counsel and inform expectant mothers outside of the Center, on Keats Street in Allentown, Pennsylvania, in an attempt to persuade them not to abort their unborn children.

Plaintiffs' claims arise from two earlier civil rights actions in this court, <u>Arietta v. City of Allentown</u>, Civil Action number 04-cv-226 ("<u>Arietta I</u>") and <u>Arietta v. City of Allentown</u>, Civil Action number 04-cv-5306 ("<u>Arietta II</u>").  In <u>Arietta I</u>, the court issued an injunction prohibiting the City from requiring "permits" for pro-life advocates' activities on Keats Street and

permitting plaintiffs to use all of Keats Street for their advocacy efforts.[2]

Subsequently, the City settled <u>Arietta II</u> by way of a Consent Judgment.  In the Consent Judgment, plaintiffs agreed not to use all of Keats Street, and agreed not to go into a 7-foot-wide crosswalk running from the exit of the Center parking lot on the north side of Keats Street to the entrance of the Center on the south side of Keats Street, at the same time that Center clients and staff were in the crosswalk.[3]

However, plaintiffs allege that under the Consent Judgment, they are free to cross Keats Street alongside the crosswalk and thereby have access to Center clients and staff while the clients and staff are in the crosswalk.[4]  Plaintiffs allege that defendants have obstructed such access by holding tarps across Keats Street, creating a "human shield" around Center clients, and shouting or otherwise creating vocal noise to drown out plaintiffs' verbal advocacy.[5]

The Complaint alleged three claims under 42 U.S.C. § 1983 for violations of rights pursuant to the First and Fourteenth Amendments to the United States Constitution

---

[2]     Complaint, ¶ 26.

[3]     Complaint, ¶ 29.

[4]     Complaint, ¶ 30.

[5]     Complaint, ¶ 24.

-4-

(Count I), the Pennsylvania Constitution (Count II), and the Equal Protection clause of the Fourteenth Amendment (Count III). Count IV alleges a Pennsylvania state-law claim for public nuisance.

The City defendants filed their Answer on July 23, 2008. On July 24, 2008, the Center defendants filed a motion to dismiss. By my Order and Opinion dated and filed March 31, 2009, the Center defendants' motion to dismiss was granted in part and denied in part, and Counts II and III of the Complaint were dismissed in their entirety. The Center defendants answered Counts I and IV on April 24, 2009.

By motion filed August 20, 2009, the Center defendants sought reconsideration of the March 31, 2009 Order and Opinion, contending that Counts I and IV should also be dismissed in light of the United States Supreme Court's intervening ruling in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The motion for reconsideration was denied by my Order dated February 9, 2010. Thus, the remaining operative claims as of that date were Counts I and IV against all defendants.

The City defendants filed a motion for summary judgment on March 1, 2010 and an amended motion for summary judgment, now before the court, on June 30, 2010. The original motion was dismissed as moot by my Order dated August 2, 2010. The Center defendants filed their motion for summary judgment on June 30,

2010.  Plaintiffs filed one brief in response to both motions on August 2, 2010.[6]

The Center defendants filed a reply brief on August 23, 2010.  The City defendants filed a reply brief on August 25, 2010.  On October 1, 2010, I heard oral argument on the motions and took the matter under advisement.  Hence this Opinion.

### SUMMARY OF DECISION

In Count I of their Complaint, plaintiffs Kathleen Kuhns, Joyce Mazalewski and Kathleen Teay bring an action under 42 U.S.C. § 1983 against defendants City of Allentown, Chief of Police Roger MacLean, Allentown Women's Center, Inc., and its Director, Jennifer Boulanger.  In Count I plaintiffs allege that all defendants have acted in concert to deprive them of their right to free speech under the First Amendment to the United

---

[6]     Although the City defendants' amended motion for summary judgment included numerous factual averments, it did not include a separate short concise statement, in numbered paragraphs, of undisputed material facts, as required by my August 13, 2009 Rule 16 Status Conference Order.  Therefore, by Order dated August 2, 2010, I directed the City defendants to supplement their motion by filing such a statement, which they did on August 10, 2010.

Plaintiff's August 2, 2010 comprehensive response in opposition to both motions for summary judgment included a statement in response to the Center defendants' concise statement of undisputed material facts, as well as a statement in response to the factual averments set forth in the City defendants' amended motion.  On August 16, 2010, plaintiffs filed Plaintiffs' Response to Statement of Material "Undisputed" Facts of Defendants City of Allentown and Roger MacLean (ECF Doc. 99).

Although plaintiffs' two statements in response to the City defendants' factual averments are largely similar, I have considered plaintiffs' later filing, that is, the August 16, 2010 response, and any reference in this Opinion to plaintiffs' response to the City defendants' statement of undisputed facts refers to that document.

-6-

States Constitution made applicable to the states under the Fourteenth Amendment.

For the reasons expressed below, I concluded that because plaintiffs' alleged harm was not caused by a constitutional violation, neither defendant City nor defendant Chief of Police is liable under Section 1983. Therefore, I granted summary judgment to the City defendants on Count I.

To state a claim under Section 1983, a plaintiff must allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. A defendant acts under color of state law when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.

The Center defendants are each private parties who are ordinarily not state actors. However, otherwise private acts are performed under color of state law for purposes of 42 U.S.C. § 1983 when they are part of a conspiracy with state officials. Thus, a private party defendant, whether an entity or individual, may be deemed to be a state actor for the purposes of Section 1983 liability where the private party conspires with a government official.

I concluded that plaintiffs have not sufficiently alleged a pre-arranged plan or collaborative relationship between defendant Center and its Director, on the one hand, and the City

defendants, on the other, which would imbue the Center defendants with state power sufficient to render them state actors for purposes of Section 1983 liability. I also concluded that plaintiffs have not adduced sufficient evidence from which a neutral factfinder could conclude that defendants engaged in a civil conspiracy to violate plaintiffs' constitutional rights. Therefore, I granted summary judgment to the Center defendants on Count I.

In Count IV, plaintiffs allege that all defendants created a public nuisance in violation of Pennsylvania state law. The only harm which plaintiffs allege against the City defendants in this regard is that they have engaged in conduct which unreasonably interferes with constitutional and civil rights of the plaintiffs that are common to the general public.

Because I have concluded that the City defendants have not violated plaintiffs' rights, plaintiffs' public nuisance claim necessarily fails against those defendants. Additionally, Count IV against the City defendants is barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541-8564.

Regarding Count IV, plaintiffs allege that the Center defendants created a public nuisance by blocking pedestrian and motor vehicle traffic alongside the Center on Keats Street, by employing individuals to form a human shield or "scrum" around

expectant mothers as they walk across Keats Street from the parking lot to the Center, and by shouting or otherwise creating noise.[7]  Although the Center defendants aver that they are necessarily entitled to summary judgment on Count IV because plaintiffs' constitutional claims fail, they do not address whether the escorts' actions amount to a public nuisance irrespective of the constitutional claim.

Whether there is a public right is a question of law, but whether an interference is unreasonable is a question of fact.  Because the Center defendants do not address either aspect other than to assert that plaintiffs have not established a conspiracy, I cannot conclude that the Center defendants are entitled to summary judgment on Count IV, and I deny their motion to that extent.

### STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage

---

[7]    See Complaint, ¶¶ 23-24, which are incorporated into Count IV at ¶ 45.

Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).  Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).  Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, exhibits, and the parties' respective concise statements of undisputed facts, the pertinent facts for purposes of the motion for summary judgment are as follows.

The Center is a private clinic which provides counseling and medical services, including abortion services. Defendant Jennifer Boulanger is the Center's Director.  The

Center is located within the jurisdiction of the Allentown Police Department.  Defendant Roger MacLean is the Allentown Chief of Police.[8]

Two plaintiffs in this matter, Kathleen R. Kuhns and Kathleen Teay, were plaintiffs in Arietta II.  Plaintiff Kuhns was also a plaintiff in Arietta I.[9]  Neither the Center nor defendant Boulanger was a party to Arietta I or Arietta II.[10]

In Arietta II, both plaintiffs Kuhns and Teay signed a comprehensive Settlement Agreement [and] General Release ("Settlement Agreement"), to which was appended a Consent Judgment which was approved by my July 12, 2007 Order entering final judgment in Arietta II.[11]  In the Settlement Agreement, plaintiffs Kuhns and Teay are identified as "Releasors" and the City is identified as a "Releasee".[12]

The Consent Judgment created detailed rules governing the conduct of police and pro-life advocates at and around the

---

[8]     Plaintiffs' Response to Statement of "Undisputed" Facts by Defendants Allentown Women's Center and Jennifer Boulanger, ¶¶ 2-5.

[9]     Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 7.

[10]     Although the Center attempted to intervene in Arietta II, the City and individual Arietta II defendants opposed the Center's motion to intervene, and the motion to intervene was denied.  Plaintiffs' response to Center defendants' statement of undisputed facts, ¶¶ 13-16.

[11]     Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 8; see also Motion of Defendants Allentown Women's Center and Jennifer Boulanger for Summary Judgment ("Center defendants' summary judgment motion"), Exhibit C (July 12, 2007 Order) and Exhibit D (Consent Judgment).

[12]     Center defendants' summary judgment motion, Exhibit E (Settlement Agreement).

entrance to the Center. Specifically, it created a seven-foot-wide crosswalk spanning Keats Street, connecting the Center's parking lot and the entrance to the Center. Additionally, it created a four-foot-wide painted walkway on Keats Street, adjacent to the Center's parking lot.

Plaintiff Mazalewski stated at her February 24, 2010 deposition that she is not making any claim in this lawsuit concerning any activities prior to 2006.[13] Plaintiff Mazalewski has never been arrested in connection with her activity at the Center.[14]

After entry of the Consent Judgment, volunteer escorts at the Center began using tarps along the crosswalk on Keats Street.[15] Defendant Boulanger testified at her March 16, 2010 deposition that the tarps are not held until someone going into the building is right in front of the crosswalk.[16] The Center

---

[13] Plaintiffs' response to Center defendants' statement of undisputed facts, ¶¶ 20, 22; Center defendants' summary judgment motion, Exhibit G (excerpt of Deposition of Joyce Mazalewski dated February 24, 2010), page 108, lines 3-6. An excerpt of plaintiff Mazalewski's February 24, 2010 deposition is also attached to the Amended Motion for Summary Judgment of Defendants City of Allentown and Chief of Police Roger MacLean ("City defendants' summary judgment motion") as Exhibit K. Collectively, I refer to the excerpts of plaintiff Mazalewski's deposition as the "Mazalewski deposition".

[14] Mazalewski deposition, page 113, line 25 through page 114, line 3.

[15] Center defendants' statement of undisputed facts, ¶ 23; Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 23.

[16] City defendants' summary judgment motion, Exhibit F (excerpt of Deposition of Jennifer Boulanger Anestad dated March 16, 2010), page 93, lines 19-20. See also Center defendants' statement of undisputed facts, ¶ 23; plaintiffs' response, ¶ 23.

(Footnote 16 continued):

did not obtain permission from the City before using the tarps.[17] On several occasions, plaintiffs' counsel complained to the City about defendants' use of the tarps.[18]

On December 13, 2007 and December 20, 2007, Denis Brenan, Esquire, co-counsel for plaintiffs, wrote to the City complaining about the use of the tarps and summarizing repeated correspondence with the City about the tarps.[19] The City asked plaintiffs' counsel for photographic evidence of the use of tarps.[20] Plaintiffs' counsel provided the City with a video tape.[21] Thereafter, Attorney Brenan again wrote to counsel for

---

(Continuation of footnote 16):

An excerpt of defendant Boulanger's March 16, 2010 deposition is also attached to the Center defendants' summary judgment motion as Exhibit H. Collectively, I refer to the excerpts of defendant Boulanger's deposition as the "Boulanger deposition".

[17]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 26.

[18]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 33.

[19]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 34; see also Center defendants' summary judgment motion, Exhibit M (December 13, 2007 letter from Attorney Brenan to Robert E. Goldman, Esquire) and Exhibit N (December 20, 2007 letter from Attorney Brenan to City Solicitor Jerry A. Snyder).

[20]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 37; see also Center defendants' summary judgment motion, Exhibit O.

[21]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 38.

the City by letter dated March 17, 2008 complaining about the challenged activity.[22]

By letter to Robert E. Goldman, Esquire[23] dated January 15, 2008, Attorney Brenan acknowledged that Attorney Goldman was "unaware of any City official who authorized or granted a privilege to Allentown Women's Center (AWC) with respect to its conduct in using tarps on both sides of the corridor between AWC's parking lot and its abortion facility" and stated that Attorney Brenan would "advise the court [in a private criminal dispute] that the City has neither authorized nor granted any privilege to AWC."[24]

In October 2007, the City informed the Center that the City would not press charges or take any action against any person at the Center unless there is a threat to life or a person. By letter dated May 16, 2008, Allentown City Solicitor Jerry A. Snyder advised Allentown Assistant Chief of Police

---

[22]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 40; see also Center defendants' summary judgment motion, Exhibit O (March 17, 2008 letter from Attorney Brenan to Attorney Goldman).

[23]    I take judicial notice of the fact that Attorney Goldman was co-counsel for the City in Arietta II.  See Civil Action No. 04-cv-5306, Document 183 (Entry of Appearance).

[24]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 41; see also Center defendants' summary judgment motion, Exhibit T (January 15, 2008 letter from Attorney Brenan to Attorney Goldman).

Joseph N. Hanna that "the City is neither an advocate for the protestors nor an advocate for the Women's Center."[25]

According to the Allentown Police Department command meeting minutes of April 18, 2007 and June 25, 2008, Assistant Chief Hanna advised officers to "treat the Women's Center with a hands-off approach" and that the Department needed to "remain neutral" regarding protests at the Center.[26] Additionally, according to command meeting minutes from July 11, 2007, "All complaints will be handled on a case by case basis. The department will make arrests if warranted but does not want to be in the referee position between the two parties."[27]

Although the Police Department responded to a complaint that plaintiff Kuhns violated the Consent Judgment by stepping into the crosswalk, she was not charged with any offense.[28] There have been no arrests of demonstrators at the Center since

---

[25]     City defendants' summary judgment motion, Exhibit A; see also Plaintiffs' Response Statement of Material "Undisputed" Facts of Defendants City of Allentown and Roger MacLean (ECF Doc. 99), ¶ 2.

[26]     City defendants' summary judgment motion, Exhibits B and C; see also plaintiffs' response to City defendants' statement of undisputed facts,  ¶ 3.

[27]     Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 42; Center defendants' summary judgment motion, Exhibit W.

[28]     City defendants' summary judgment motion, Exhibit E.

the Consent Judgment was entered, and no pro-life advocates have been convicted of any offenses.[29]

Assistant Chief Hanna advised defendant Boulanger that, based on his interpretation of the Consent Judgment, pro-life advocates were permitted to reach their arms inside the crosswalk.[30]  Defendant Boulanger has not had any face-to-face meetings with defendant Police Chief MacLean, but she had one meeting with the City Mayor.[31]

Defendant Boulanger did not advise the City or any of its representatives that the Center intended to use the tarps.[32] However, when asked, she advised Assistant Chief Hanna that the tarps were hand-held, as opposed to stationary.[33]  Defendant Boulanger testified at her deposition that tarps are not used at the Center until someone going into the building is right in front of the crosswalk.[34]

---

[29]    City defendants' summary judgment motion, Exhibit J (Deposition of Kathleen Kuhns dated March 4, 2010), page 47, lines 21-23; City defendants' summary judgment motion, Exhibit G (Deposition of Assistant Chief Joseph N. Hanna dated March 18, 2010), page 87, lines 305.  I note that an excerpt of Assistant Chief Hanna's March 18, 2010 deposition is also attached to the Center defendants' summary judgment motion as Exhibit J.  Collectively, I refer to the excerpts of Assistant Chief Hanna's deposition as the "Hanna deposition".

[30]    Boulanger deposition, page 64, lines 4-6.

[31]    Boulanger deposition, page 85, lines 10-15; page 86, lines 10-14.

[32]    Boulanger deposition, page 102, lines 1-4.

[33]    Boulanger deposition, page 104, line 25 to page 105, line 2.

[34]    Boulanger deposition, page 93, lines 19-20.

Defendant Boulanger has never discussed the use of tarps with Chief MacLean, the Mayor, or the City Solicitor.[35] Moreover, Chief MacLean has not spoken to defendant Boulanger since the settlement of Arietta II.[36] Assistant Chief Hanna testified at his March 18, 2010 deposition that he "had a professional relationship with Jennifer Boulanger" and that he "understood the challenges they had in operating a business, and equally understood the passion behind the pro-life advocates". He also testified that he "tried to maintain a neutrality and disseminate that down through the ranks and to patrol officers that would be responding [at the Center]."[37]

By letter dated May 16, 2008, City Solicitor Snyder advised Assistant Chief Hanna that he had reviewed a tape provided by the Center to the Department depicting a compilation of multiple incidents at the Center, concluding that he "would not recommend a prosecution based on the evidence as compiled in this videotape." He further concluded that he would "not recommend any action on behalf of the City alleging that the

---

[35]     Boulanger deposition, page 107, line 24 to page 108, line 5. Although plaintiffs aver in their response to the City defendants' statement of undisputed facts that this fact is denied, they offer no specific citation to the record which would support the conclusion that there is a genuine issue of material fact on this point, as required by my Rule 16 Status Conference Order dated August 13, 2009.  Accordingly, I consider this fact undisputed.

[36]     City defendants' summary judgment motion, Exhibit H (Deposition of Chief Roger MacLean dated March 22, 2010), page 58, lines 15-18.

[37]     Plaintiffs' response to Center defendants' statement of undisputed facts, ¶¶ 43-44; Hanna deposition, page 84, lines 10-19.

pro-life advocates  are in violation of the stipulation in Arietta II."[38]

In his May 16, 2008 letter, City Solicitor Snyder also advised Assistant Chief Hanna that

> [a]s you and I have previously discussed any evidence from either the protestors or the Women's Center of alleged criminal violations will be reviewed thoroughly, hence in the future Ms. Boulanger should feel free to forward additional tapes or evidence to us for review.  While both the protestors and Ms. Boulanger have widely divergent interests, they will be treated no differently than any other citizen of the City of Allentown, as the City is neither an advocate for the protestors nor an advocate for the Women's Center.[39]

There are times when pro-life advocates are in the part of Keats Street where cars travel.[40]  In December 2009, pro-life advocates placed a manger scene at the Center, which the Center reported to the Department.  No one was arrested as a result of that complaint.[41]

---

[38]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 46; Center defendants' summary judgment motion, Exhibit Z (May 16, 2008 letter from Solicitor Snyder to Assistant Chief Hanna).

[39]    Plaintiffs' response to Center defendants' statement of undisputed facts, ¶ 47; Center defendants' summary judgment motion, Exhibit Z.

[40]    Mazalewski deposition, page 132, lines 6-9.

[41]    Boulanger deposition, page 131, line 12 to page 132, line 17.

## Contentions of City Defendants

The City defendants contend that they are entitled to summary judgment on both remaining counts (Counts I and IV) of plaintiffs' Complaint for three reasons.

First, they contend that plaintiffs have adduced no evidence from which a reasonable inference could be drawn that the City has a custom, practice, or policy that caused any violation of plaintiffs' First or Fourteenth Amendment rights. Specifically, they aver that the City was not an advocate for either the pro-life advocates or the Center, and that the City's neutral stance is evidenced by a May 16, 2008 letter from the City Solicitor to Assistant Chief of Police Joseph Hanna[42] as well as Police Department command meeting minutes from April 18, 2007 and June 25, 2008.[43]

The City further contends that although its Police Department responded to several complaints since the Consent Judgment was entered, it has not issued any citations against either the Center or the plaintiffs. Moreover, the City avers that the City told the Center that the Center could not use stationary tarps and could not use tarps in a way which would impede the flow of traffic. The City asserts that Assistant

---

[42]     City defendants' summary judgment motion, Exhibit A.

[43]     City defendants' summary judgment motion, Exhibits B and C, respectively.

-19-

Chief Hanna never encouraged the Center or defendant Boulanger to continue to use tarps, and that defendant Boulanger did not advise the City that the Center intended to use tarps prior to using them.

Thus, the City defendants contend there is no record evidence to support a conclusion that there was a conspiracy or agreement between the City and the Center, and that the undisputed facts are that the City has maintained a neutral position regarding the Center and plaintiffs.  Accordingly, the City contends it is entitled to summary judgment on Count I.

Second, the City defendants contend that defendant Chief MacLean is entitled to summary judgment in his favor on Counts I and IV because the undisputed facts show that he had no personal involvement in the alleged violation of plaintiffs' First or Fourteenth Amendment rights, and had no involvement in creating a public nuisance.

Specifically, the City defendants assert that "[t]here is no evidence of allegations of personal direction by Moving Defendant MacLean with regard to the activity by the [Center] Defendants" and that defendant MacLean has not spoken to defendant Boulanger since the settlement of <u>Arietta II</u>.[44]  The City defendants further aver that there is no evidence that defendant MacLean had actual knowledge and acquiesced in the

---

[44]     City defendants' brief, page 10.

-20-

violation of plaintiffs' First or Fourteenth Amendment rights.
Therefore, the City defendants contend that defendant MacLean is
entitled to summary judgment on both remaining counts.

Third, the City defendants contend they are immune from
plaintiffs' Count IV claim for public nuisance pursuant to the
Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A.
§§ 8541-8564, which provides local agencies with statutory
immunity from suit on state tort claims.  They aver that under
the act, defendant MacLean is liable only to the extent the City
is liable, because he is an employee of the City and the alleged
acts fall within the scope of duties of his office.

The City defendants contend that the Political
Subdivision Tort Claims Act provides immunity except in eight
specifically enumerated situations, none of which apply here; and
the "willful misconduct" provision does not apply because there
is no evidence that either the City or defendant MacLean made an
intentional attempt to unreasonably interfere with plaintiffs'
rights.

Accordingly, the City defendants aver that they are
entitled to summary judgment in their favor on Counts I and IV.

### Contentions of Center Defendants

The Center defendants contend that they are entitled to
summary judgment in their favor on Counts I and IV because
plaintiffs have adduced no evidence of a conspiracy between the

Center and the City to interfere with plaintiffs' exercise of
First Amendment rights.

Moreover, the Center defendants aver that plaintiffs
have no claim against the Center, even if the Center is legally
responsible for the acts of the escorts, because plaintiffs fail
to show state action.  The Center defendants assert that because
the Center and escorts are private parties who do not act under
color of state law, they cannot violate plaintiffs'
constitutional rights.  They further aver that the only activity
by the City is its unilateral decision not to take action to stop
escorts at the Center from engaging in the challenged activity.
They contend that the decision not to stop the escorts cannot
form the basis of a Section 1983 claim because it fails the
"action" component of "state action".[45]

The Center defendants also argue that plaintiffs cannot
pursue any claims on the basis of activity which occurred before
the Arietta II settlement because plaintiffs Kuhns and Teay are
bound by the release provisions of the settlement agreement.
Specifically, they contend that the Arietta II settlement
agreement contains a general release which releases all claims
those plaintiffs (including plaintiffs Kuhns and Teay) may have
had against the City.

---

[45]     The Center defendants further aver that the City's decision not to
stop the escorts was appropriate because the escorts (and the Center) are not
bound by the Arietta II settlement, and therefore the City would have no legal
basis on which to stop the escorts' activities.

According to the Center defendants, this release extends to defendant Chief MacLean, as well as "all persons acting through, under or in concert with" the City. Thus, they contend that to the extent plaintiffs allege that the City conspired with the Center before the _Arietta II_ settlement, such claims would also be released under the settlement agreement.

The Center defendants aver that plaintiff Mazalewski also cannot maintain an action for any purported acts which occurred prior to fall 2006, even though she was not a plaintiff in _Arietta II_, because she admitted in her deposition[46] that she did not begin protesting regularly at the Center until fall 2006. Thus, she lacks standing to challenge any activity which took place before then.

Finally, the Center defendants contend that plaintiffs' state-law public nuisance claim fails because the claim is premised on a conspiracy between the City and the Center, which plaintiffs have failed to prove. Specifically, they aver that plaintiffs cannot show a "particular harm" for purposes of establishing a public nuisance in this context unless their First Amendment rights have been violated. (The Center defendants aver that "Without a conspiracy, the Women's Center, as a purely private actor, cannot have violated the protesters' First Amendment rights, and without a constitutional violation, the

---

[46]    _See_ Mazalewski deposition, pages 107-108.

protesters have not suffered any particular harm not equally suffered by any other member of the public."[47])

Accordingly, the Center defendants contend they are entitled to summary judgment on Counts I and IV.

<u>Plaintiffs' Contentions</u>

As an initial matter, plaintiffs assert that they are not pursuing any claims against the City defendants based on acts committed before the <u>Arietta II</u> settlement, and that the pre-settlement acts of the City defendants have been pled only for historical context. They further aver that plaintiff Mazalewski is not pursuing any claims based on acts which occurred before she became a pro-life advocate at the Center in 2006.

Plaintiffs contend that record evidence supports their claim that the Center's conduct is under color of state law and that all defendants are liable under § 1983. They further contend that a tacit agreement suffices to establish a civil conspiracy, and that there is circumstantial and direct evidence showing that the City has "aided and abetted [the Center] according to an understanding and common purpose of devising a way to nullify the exercise of plaintiffs' First Amendment rights".[48]

---

[47]  Center defendants' brief, page 21.

[48]  Plaintiffs' brief, page 19.

Specifically,[49] plaintiffs contend there is record
evidence supporting findings that, among other things,

> (1) Assistant Police Chief Hanna approved the use
>     of tarps.
>
> (2) An investigating officer's report noted that
>     using tarps to wall off the crosswalk was
>     approved "per administration".
>
> (3) Defendant Boulanger sent Assistant Chief
>     Hanna a box of cookies in "appreciation"
>     after the City approved the action.
>
> (4) The City opined that a stationary canopy
>     would violate the consent judgment but that
>     tarps "raised up to shield the clients'
>     identity from the protesters" and then taken
>     down again would not.
>
> (5) Assistant Chief Hanna confirmed the City's
>     approval of the Center's use of the tarps in
>     an email to defendant Boulanger, who replied
>     that the tarps "effectively help us get in
>     the door without being hit by arms and
>     pamphlets".
>
> (6) Defendant Boulanger further advised Assistant
>     Chief Hanna that the tarps "seem to help".
>
> (7) At a command meeting attended by the Police
>     Department's "command structure", the policy
>     was confirmed and the manner in which the
>     tarps may be used was prescribed; and
>
> (8) Defendant Chief MacLean was fully aware of
>     Assistant Chief Hanna's actions and
>     decisions.

Plaintiffs suggest that these facts constitute evidence
of an agreement between the City and the Center and at least show
intentional tolerance or a policy of "look[ing] the other way"

---

[49] See plaintiffs' brief, page 20.

when private parties violate constitutional rights.  Plaintiffs

contend that this amounts to the City authorizing the Center to

subvert the Consent Judgment, "thus engaging in joint

action with the private party to make a mockery of its settlement

with the plaintiffs".[50]

Moreover, plaintiffs contend that the City is directly

liable for the civil rights violations because it had a policy or

custom of looking the other way where the Center is concerned.

They further assert that defendant MacLean was personally

involved because he participated in command meetings and had full

knowledge and approval of the City's policy of "authorizing [the

Center's] conduct 'unless something life threatening occurs'".[51]

In addition, plaintiffs argue that the City had the

right, and was obligated, to prevent the Center from violating

plaintiffs' First Amendment rights.  They contend that the

Consent Judgment in Arietta II establishes that their activities

are effectively a public forum demonstration which has been

authorized by permit, and therefore the City has an "interest in

ensuring that a permit-holder can use the permit for the purpose

for which it was obtained", including the "rights of police

officers to prevent counter-demonstrators from disrupting or

---

[50]     Plaintiffs' brief, page 23.

[51]     Plaintiffs' brief, page 25.

interfering with the message of the permit-holder."  <u>Startzell v.</u>
<u>City of Philadelphia</u>, 533 F.3d 183, 198-199 (3d Cir. 2008).

Additionally, plaintiffs assert that by approving the
Center's obstruction of plaintiffs' access to the crosswalk by
using tarps, bodies and noise, the City is violating the Consent
Judgment (by which plaintiffs agreed to stay outside the
crosswalk while Center-related persons are using it in exchange
for plaintiffs' ability to walk on either side of the crosswalk
to "counsel women and offer them literature")[52].  Plaintiffs aver
that the Center is only able to shut down their demonstration
because the City has acted jointly with the Center to effectively
"turn a public forum into a private corridor for a long-favored
business in violation of the City's duties to plaintiffs."[53]

Moreover, plaintiffs argue that although they have not
moved for summary judgment, this court should <u>sua sponte</u> grant
summary judgment to plaintiffs as the nonmoving party on the
First Amendment claim.  In support of this assertion, plaintiffs
aver that there is evidence which establishes, as a matter of
law, that the Center and City have acted jointly to violate
plaintiffs' First Amendment rights and to subvert the Consent
Judgment.

---

[52]    Plaintiffs' brief, page 29.

[53]    Plaintiffs' brief, page 30.

Finally, regarding Count IV, plaintiffs argue that the City is not immune from liability on the public nuisance claim because the Pennsylvania Political Subdivision Tort Claims Act does not provide immunity in cases of "willful misconduct" by an employee. They contend that because the City defendants desired to bring about the violation of plaintiffs' rights, they have engaged in willful misconduct which is not protected by the act.

## DISCUSSION

### Count I

*Section 1983*

Plaintiffs' constitutional claims are actionable against defendants through 42 U.S.C. § 1983. Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under § 1983, a plaintiff must allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)(quoting Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

*Municipal Liability*

Municipalities are considered "persons" under § 1983 and may be held liable for constitutional torts if two prerequisites are met: (1) the plaintiff's harm was caused by a constitutional deprivation; and (2) the municipal entity is responsible for that violation. Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261, 270 (1992).

A municipality cannot be held vicariously liable for the constitutional violations of its agents under a theory of respondeat superior. Langford v. Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). Instead, municipal entities are only liable under § 1983 "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 694, 98 S.Ct 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978).

For purposes of § 1983, a municipal policy is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers. <u>Monell</u>, 436 U.S. at 690, 98 S.Ct. at 2035-2036, 56 L.Ed.2d at 635. Thus, municipalities are liable only for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." <u>Board of the County Commissioners v. Brown</u>, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626, 639 (1997). A custom may lead to municipal liability if "the relevant practice is so widespread as to have the force of law", even though not formally adopted by the municipality. <u>Id.</u>

Here, plaintiffs allege that defendants have acted in concert to deprive them of their First Amendment right to free speech. "The right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention." <u>Kovacs v. Cooper</u>, 336 U.S. 77, 87, 69 S.Ct. 448, 454, 93 L.Ed. 513, 522

(1949); see Hill v. Colorado, 530 U.S. 703, 728, 120 S.Ct. 2480, 2495, 147 L.Ed. 597, 619 (2000). "The right of free speech does not embrace a right to snuff out the free speech of others." Startzell v. City of Philadelphia, 533 F.3d 183, 197 (3d Cir. 2008)(internal punctuation omitted).

It is undisputed that the restrictions on expression in this case are directly employed by private actors, that is, the volunteer escorts at the Center. Ordinarily, the First Amendment is not implicated when private actors design restrictions on expression. Indeed, in many instances the First Amendment "has been held to guarantee private actors the right to make such restrictions." R.C. Maxwell Company v. Borough of New Hope, 735 F.2d 85, 87 (3d Cir. 1984).

Plaintiffs contend that under Startzell, the City is required to regulate private activity at the Center in order to effectuate the Consent Judgment. That is, plaintiffs contend that the City has an affirmative duty to ensure that plaintiffs can counsel women and offer them literature as they access the crosswalk to enter the Center.

However, as the City defendants argue, Startzell is distinguishable from the case at bar because it addressed the First Amendment rights of a party who had obtained a city-issued permit for a public-forum demonstration against those rights of counter-protestors. In determining that the City of Philadelphia

permissibly relocated disruptive counter-protestors, the Third
Circuit noted that the City of Philadelphia had an interest in
ensuring that the permitted speech (i.e., the public forum for
which the city had issued a permit) could take place. Startzell,
533 F.3d at 198-199.

Plaintiffs argue that the Consent Judgment is
effectively a "permit" which allows them to advocate on Keats
Street, and that Startzell therefore requires the City to ensure
that plaintiffs can counsel women and offer them literature.
However, they cite no authority for the proposition that the
Consent Judgment is analogous to a city-issued permit such as in
Startzell.

Even assuming, without deciding, that the Consent
Judgment effectively grants plaintiffs a permit to counsel women
and offer them literature on Keats Street, I note that the Third
Circuit's decision in Startzell does not hold that a city is
*obligated* to ensure that a permit-holder can engage in permitted
speech. Rather, the Third Circuit concluded that the City had an
*interest* in ensuring such speech could take place for the purpose
for which the permit was obtained, and that that interest had a
bearing on whether the City of Philadelphia could regulate the
speech of counter-protestors. Startzell, 533 F.3d at 198-199.

Accordingly, I conclude that plaintiffs have not
established that the City defendants are obligated to ensure that

plaintiffs are able to counsel and provide literature to women entering through the crosswalk.  In other words, because plaintiffs have not established that their rights were violated by state actors, they have not established a constitutional violation.  See R.C. Maxwell, 735 F.2d at 87; see also Friends and Residents of Saint Thomas Township, Inc. v. Saint Thomas Development, Inc., 2005 WL 6133388, at *10 (M.D.Pa. March 31, 2005)(Kane, J.), which notes that "The question of whether a party is a state actor is not determined by whether such party allegedly violated another's constitutional rights.  Instead, whether one's constitutional rights were violated first depends on whether the party allegedly causing the deprivation was, in fact, a state actor."

Because plaintiffs' harm was not caused by a constitutional violation, the municipality is not liable under § 1983.  Collins, 503 U.S. at 120, 112 S.Ct. at 1066, 117 L.Ed.2d at 270.  Moreover, because there has been no constitutional violation, Chief MacLean is also not liable.

Specifically, in order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Although plaintiffs contend that Chief MacLean's personal involvement in the alleged violations can be shown through knowledge and acquiescence, see id., I have concluded that there

has been no constitutional violation, as discussed above. Therefore, Chief MacLean cannot have participated in, and therefore cannot be liable for, any such violations.

Accordingly, I grant summary judgment in favor of the City defendants on Count I of plaintiffs' Complaint.[54]

*Center Defendants' Liability*

It is settled that "otherwise private acts are performed under color of state law for purposes of 42 U.S.C. § 1983, when they are part of a conspiracy with state officials." Goadby v. PECO, 639 F.2d 117, 120 n.2 (3d Cir. 1981). The Third Circuit has explained that

---

[54]    Plaintiffs aver at page 31 of their brief in opposition that "A third ground for regulating [the Center's] conduct would be City Code, Section 703.04, and 25 Pa.C.S.A. Section 5507 - the very laws the City employed in *Arietta II* in an attempt to keep pro-life advocates off Keats Street by charging that their presence constituted blocking of the street."   However, they offer no meaningful legal analysis in support of this "third ground". See E.D.Pa.R.Civ.P. 7.1(c).

Moreover, a review of Allentown City Code provisions available online at www.allentownpa.gov shows there is no code provision numbered 703.04.  Although plaintiffs may have intended to cite to section 730.04, which governs loitering and obstructing public places, the basis for their argument is unclear.  Additionally, I note that there is no statutory provision numbered 25 Pa.C.S.A. § 5507.  Accordingly, I am unable to evaluate the merits of these contentions.

Plaintiffs also suggest that the crosswalk at issue is not a crosswalk as contemplated by the Pennsylvania Motor Vehicle Code requiring vehicle drivers to yield the right-of-way to a pedestrian crossing within a marked crosswalk or intersection.  See 75 Pa.C.S.A. §§ 3542-3543.  In support of this averment, plaintiffs argue that the crosswalk was "specially created" pursuant to the Consent Judgment.  (Plaintiffs' brief, page 31.)

To the extent the nature of the crosswalk is relevant, I note that the Pennsylvania Motor Vehicle Code defines "crosswalk" broadly and, in relevant part, as "[a]ny portion of a roadway...distinctly indicated for pedestrian crossing by lines or other markings on the surface".  75 Pa.C.S.A. § 102.  Plaintiffs cite no authority in support of their suggestion that the Motor Vehicle Code does not contemplate the creation of a crosswalk in accordance with a court Order.

> [D]efendant acts under color of state law if there
> is such a close nexus between the State and the
> challenged action that seemingly private behavior
> may be fairly treated as that of the State itself.
> A plaintiff may show such a nexus by establishing
> that the state and a private actor conspired with
> one another to violate an individual's rights.

Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 172

(3d Cir. 2007) (internal punctuation omitted).

Thus, a private party defendant, whether an entity or individual, may be deemed to be a state actor for the purpose of § 1983 liability where the private party conspires with a government official.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1998); M&M Stone Co. v. Pennsylvania, 2008 U.S.Dist. LEXIS 76050, *64 (E.D.Pa. 2008)(Gardner, J.). Accordingly, the Center defendants, as private parties, are state actors for this purpose only if they have conspired with government officials (here, City officials) to deny plaintiffs' constitutional rights.

To show such a nexus by establishing that the state and private actor conspired with one another, plaintiff must prove the elements of a civil conspiracy.  Adams, 214 Fed.Appx. at 172. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. Id.  Such

agreement can be shown by direct or circumstantial evidence. <u>Id.</u> (citing <u>Ball v. Paramount Pictures</u>, 169 F.2d 317, 319-320 (3d Cir. 1948), which holds that a "conspiracy may be inferred when the concert of action 'could not possibly be sheer coincidence'").

The Center defendants contend that there can be no § 1983 liability against them, because they and the escorts who hold the tarps are private parties and therefore are not state actors. The Center defendants aver that they did not conspire with the City defendants to violate plaintiffs' constitutional rights, and that there is no evidence that the City actively supported the challenged conduct, and therefore there is no requisite "nexus". Moreover, they note that the Center is not a party to the Consent Judgment.

Plaintiffs aver that whether such a conspiracy exists is a fact question which precludes entry of summary judgment in defendants' favor. In support of this contention, plaintiffs state that the City authorized or approved the use of tarps, bodies or noise by advising the Center that tarps could be used if they were not stationary. They also cite evidence that defendant Boulanger and Assistant Chief Hanna were on a first-name basis, and that the Center gave the Department a gift of Christmas cookies, thereby evidencing a close relationship.

However, plaintiffs have not alleged a "pre-arranged plan or collaborative relationship" between the Center defendants and City officials which would imbue the Center defendants with state power sufficiently to render them state actors.  Cooper v. Muldoon, 2006 WL 1117870, at *2 (E.D.Pa. April 26, 2006) (Schiller, J.).  See also Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984), which requires plaintiffs to show "the existence of a pre-arranged plan by which the police substituted the judgment of private parties for their own official authority" and notes that absent such a showing, the private party cannot be said to have engaged in a concerted or joint action with the police necessary to bring them within the scope of a § 1983 claim.

It is undisputed that the Center did not obtain permission from the City before using the tarps, and that defendant Boulanger did not advise the City or any of its representatives that the Center intended to use the tarps. Therefore, I conclude that plaintiffs have not adduced evidence which shows a sufficiently close nexus, nor have they shown a pre-arranged or collaborative plan which warrants § 1983 liability against the Center defendants.  Adams, 214 Fed.Appx. at 172; Cruz, 727 F.2d at 80.

Moreover, it is also undisputed that the City has consistently articulated a "neutral" and "hands-off" policy

regarding use of tarps at the Center.  Although plaintiffs
contend that this policy is effectively an approval of such use,
I determined, as discussed above, that the City did not violate
plaintiffs' constitutional rights.  Accordingly, I find that
plaintiffs have not adduced evidence from which a neutral
factfinder could conclude that defendants engaged in a civil
conspiracy to violate plaintiffs' constitutional rights.
Therefore, I grant summary judgment in favor of the Center
defendants on Count I.

Count IV

*Public Nuisance*

A public nuisance is "an unreasonable interference with
a right common to the general public."  <u>Allegheny General
Hospital v. Philip Morris, Inc.</u>, 228 F.3d 429, 446 (3d Cir. 2000)
(citing <u>Philadelphia Electric Company v. Hercules, Inc.</u>,
762 F.2d 303, 315 (3d Cir. 1985)).  "In order to recover damages
in a private action for public nuisance, a plaintiff must have
suffered a harm of greater magnitude and of a different kind than
that which the general public suffered."  228 F.3d at 446.

Defendants contend that plaintiffs' public nuisance
claim is dependent on their constitutional claim and that to the
extent I grant summary judgment in defendants' favor on Count I,
I must also grant summary judgment on Count IV.  Specifically,
plaintiffs' Complaint avers that defendants "have engaged in

conduct that unreasonably interferes with constitutional and civil rights of the plaintiffs that are common to the general public."[55]  Plaintiffs have pled no other particular harm for purposes of their public nuisance claim against the City defendants.

Because I have concluded that the City defendants have not violated plaintiffs' rights, plaintiffs' public nuisance claim necessarily fails against those defendants because they have pled no harm other than the conduct alleged in those counts. Accordingly, I grant the City defendants' motion to the extent they seek summary judgment on Count IV.[56]

---

[55]    Complaint, ¶ 46.

[56]    Additionally, I note that Count IV against the City defendants also is barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541-8564, which provides that "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S.A. § 8541.  For purposes of this act, a "local agency" is defined as a "government unit other than the Commonwealth government."  42 Pa.C.S.A. § 8501.

The Pennsylvania Political Subdivision Tort Claims Act provides blanket governmental immunity from state-law claims except in eight specifically enumerated situations, which are set forth in the Act, and which do not apply (nor do plaintiffs contend that any of those circumstances exist here).  See 42 Pa.C.S.A. § 8542.  Because none of those circumstances apply in this case, the City is immune from plaintiffs' state-law public nuisance tort claim, and I grant summary judgment in the City's favor on Count IV on that basis.  See United States v. Sunoco, 501 F.Supp.2d 656, 660 (E.D.Pa. 2007)(Brody, J.), which cites Duquesne Light Company v. Pennsylvania American Water Company, 850 A.2d 701, 705 (Pa.Super. 2004) for the proposition that Pennsylvania courts view public nuisances as a kind of tort.

An employee of a local agency enjoys the same scope of immunity (official immunity) as the agency (governmental immunity).  42 Pa.C.S.A. § 8545.  Although the act abrogates immunity for individual employees who commit intentional torts, such abrogation does not extend to the municipality. Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 357-358 (E.D.Pa. 2007)(Pollak, S.J.); see also 42 Pa.C.S.A. §§ 8545-8550.  Thus, although Chief

(Footnote 56 continued):

-39-

However, regarding the Center defendants, Count IV of the Complaint alleges that the Center defendants created a public nuisance by blocking pedestrian and motor vehicle traffic on Keats Street, by employing individuals to form a human shield around the expectant mothers as they walk across Keats Street, and by shouting or otherwise creating vocal noise.[57]

Although the Center defendants aver that they are necessarily entitled to summary judgment on Count IV because plaintiffs' constitutional claim fails, they do not address whether the escorts' actions amount to a public nuisance irrespective of the constitutional claim. Rather, the Center defendants aver that plaintiffs cannot have suffered a public nuisance unless they can establish a constitutional claim.

Whether there is a public right is a question of law, but whether an interference is unreasonable is a question of fact. Reynolds v. Rick's Mushroom Service, Inc., 246 F.Supp.2d 449, 460 (E.D.Pa. 2003)(citing Machipongo Land & Coal Company v. Department of Environmental Protection, 569 Pa. 3, 40,

---

(Continuation of footnote 56):

MacLean can be liable on Count IV only if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," see 42 Pa.C.S.A. § 8550, such liability would not be attributed to the City itself.

Nonetheless, because I have concluded that plaintiffs' rights have not been violated by the City, Chief MacLean is not responsible for any alleged injury. See Udujih, supra; 42 Pa.C.S.A. § 8550.

[57] Complaint, ¶¶ 23 and 24, incorporated into Count IV at ¶ 45.

799 A.2d 751, 773 (2002).  Here, the Center defendants do not
address either aspect other than to assert that plaintiffs have
not established a conspiracy.  Accordingly, I cannot conclude
that the Center defendants are entitled to summary judgment on
Count IV, and I deny their motion to that extent.

CONCLUSION

For all the foregoing reasons, I grant the Amended
Motion for Summary Judgment of Defendants City of Allentown and
Chief of Police Roger MacLean, and I enter judgment in their
favor and against plaintiffs on Counts I and IV.

I grant in part and deny in part the Motion of
Defendants Allentown Women's Center and Jennifer Boulanger for
Summary Judgment, and I enter judgment in their favor on Count I.
However, I deny that motion to the extent it seeks summary
judgment as to Count IV.